ORIGINAL

# United States Court of Appeals for the Federal Circuit

FILED
JUN 2 2008
U.S. COURT OF FEDERAL CLAIMS

2007-5011

CHARLES CARLSEN, JOHN T. DAMICO,
LOURDES NATAL, and JOHN W. TUCKER, SR.,

PlaintiffsAppellants,

v.

UNITED STATES,

Defendant-Appellee.

---

2007-5099

PATRICK SHEA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Alan Banov, Alan Banov & Associates, of Washington, DC, argued for plaintiffs-appellants in Appeal Nos. 2007-5011 and 2007-5099.

Domenique Kirchner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in Appeal Nos. 2007-5011 and 2007-5099. With her on the brief were Jeanne E. Davidson, Director, and Kathryn A. Bleecker, Assistant Director.

Appealed from: United States Court of Federal Claims

Senior Judge Eric Bruggink

# United States Court of Appeals for the Federal Circuit

2007-5011

CHARLES E. CARLSEN, JR., JOHN T. DAMICO,
LOURDES NATAL and JOHN TUCKER, SR.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

2007-5099

PATRICK SHEA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeals from the United States Court of Federal Claims in 00-CV-617 and 03-CV-4460,
Senior Judge Eric G. Bruggink

---

DECIDED: April 9, 2008

---

Before BRYSON, LINN, and MOORE, Circuit Judges.

BRYSON, Circuit Judge.

A group of employees working at facilities operated by the federal Bureau of Prisons claim that they have had to perform overtime work for which they were not compensated. Along with a large number of other Bureau of Prisons employees, they filed suit in the Court of Federal Claims contending that under the Federal Employees Pay Act, 5 U.S.C. § 5542, they were entitled to be paid for the overtime that they worked. The trial court analyzed the claims in great detail, conducted a trial with respect to certain of the claims, and ultimately determined that the plaintiffs were not entitled to relief. Bishop v. United States, 74 Fed. Cl. 144 (2006) (Bishop II) (judgment following trial in Shea case); Bishop v. United States, 72 Fed. Cl. 766 (2006) (Bishop I) (partial summary judgment in Shea case); Carlsen v. United States, 72 Fed. Cl. 782 (2006) (summary judgment in Carlsen case). With respect to some of the claims, the court held that the plaintiffs had not shown that they had performed uncompensated overtime work. With respect to other claims, the court held that any overtime work performed was de minimis and not required to be compensated. We have carefully reviewed the trial court's factual and legal determinations, and we affirm the judgments in both cases in all respects. Because the trial court's treatment of the issues was so comprehensive, we will not restate the facts and the legal background of the two cases in detail, but merely address the principal legal issues raised on appeal.

I

The five appellants in these two cases worked in various positions in two Bureau of Prisons facilities—the Federal Correctional Institution in Otisville, New York, and the Medical Center for Federal Prisoners in Springfield, Missouri. Each of the appellants has individual claims to compensation for particular types of overtime. In addition,

however, all five appellants present one common claim—that the trial court improperly applied this court's decision in Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004). In that case, this court held that occasional overtime work allegedly performed by a group of Department of Justice attorneys was not subject to compensation under the Federal Employees Pay Act unless the overtime was directed or approved in writing by a person authorized to approve such overtime. The court ruled that a regulation issued by the Office of Personnel Management ("OPM") was the basis for the requirement of written authorization for irregular overtime work. See Doe, 372 F.3d at 1362. That regulation provides as follows: "Overtime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.112(c).

The appellants first contend that the Doe case should not be applied to law enforcement agencies such as the Bureau of Prisons. Unlike Department of Justice attorneys, who work substantially independently, employees of the Bureau of Prisons work in a secure environment where they are required to follow all orders, written or oral. Accordingly, the appellants argue, it would be unrealistic and an invitation to abuse to require a written order as a prerequisite for compensated overtime; such a requirement would lead, according to the appellants, to a regime in which employees would routinely be required to perform uncompensated overtime work as a result of oral orders that they would not be free to disregard.

Whatever the force of the appellants' argument as a policy matter, it does not provide a valid basis for distinguishing Doe. The regulation on which Doe was based

applies throughout the civilian workforce; it is not limited to Department of Justice attorneys or other employees who work in a less structured environment than employees of the Bureau of Prisons. Moreover, as the government points out, several of the cases that the court relied on in Doe involved law enforcement agencies, yet the court in those cases still applied the "written order" rule found in the regulation. See Doe, 372 F.3d at 1352-53, citing Gray v. United States, 136 Ct. Cl. 312 (1956), and Tabbutt v. United States, 121 Ct. Cl. 495 (1952).

The appellants next contend that even if the trial court was correct to apply the Doe decision to Bureau of Prison employees, the court adopted an unreasonable interpretation of Doe when it found that certain Bureau of Prisons documents did not satisfy the regulatory "written order" requirement. In particular, the appellants contend that documents such as agency manuals, standards of conduct, and training documents emphasized that Bureau of Prisons employees were required to follow the orders of their superiors. Because those documents, when considered together with oral directives, had the effect of requiring the employees to work outside their scheduled shifts, the appellants argue that those documents constitute "written orders" sufficient to satisfy the requirements of the regulation. The appellants also contend that other documents, such as emails from the warden's secretary and announcements of the times and places of meetings that employees were expected to attend, constituted sufficient written orders, at least in light of the culture of the Bureau of Prisons, which "obligates employees to follow all orders and to complete their work before leaving."

The trial court held that most of the written materials on which the appellants rely were similar to the materials at issue in the Doe case and that they failed to satisfy the

requirements of the OPM regulation because, like the materials in Doe, they did not constitute express written directives to the employees to work overtime. We agree with the trial court's ruling. Documents such as manuals and training materials that instruct employees that they are required to follow orders given to them by authorized superiors are similar to the materials found insufficient in the Doe case to constitute directives to work overtime. See Doe, 372 F.3d at 1362-63 (discussing insufficiency of the alleged written orders). They do not direct the performance of overtime work; to treat such documents as written directives to perform overtime work would have the effect of converting oral directives to perform particular work into written directives to work overtime in virtually any government agency, as the requirement that subordinates comply with lawful directives of their supervisors is not a policy limited to the Bureau of Prisons. We also agree with the trial court that the less formal written materials at issue in this case, such as email reminders of meetings and employees' performance standards, do not satisfy the requirement of an express written order to perform overtime, because none of them directed work in general, or certain tasks in particular, to be performed outside the employees' regularly scheduled shifts.

Although the trial court rejected most of the written materials as not satisfying the requirements of the OPM regulation, the court found that one set of documents satisfied the "written order" requirement—certain "post orders" that defined the lieutenants' duties for each shift. The court found that where those post orders "inherently required the presence of two employees, one of whom is off-duty" in order to exchange information and equipment at the change of shifts, the employees were required to perform work-related tasks either prior to or after their shifts; thus, the court

found that those post orders constituted written orders to work overtime. Bishop I, 72 Fed. Cl. at 777. With respect to Mr. Shea's claims based on those post orders, the court conducted a trial. Following the trial, the court concluded that the amount of overtime that Mr. Shea performed pursuant to the post orders was de minimis and therefore not compensable. Bishop II, 74 Fed. Cl. at 151-54. In the Carlsen case, the trial court reached the same conclusion on summary judgment, holding that the amount of overtime attributable to the post orders was de minimis. Carlsen, 72 Fed. Cl. at 798-800.

II

Before his retirement in 2006, appellant Shea worked as a lieutenant at the Bureau of Prisons facility in Otisville, New York. During his six-year claim period, he served in various capacities and shifts, and he has made different overtime claims with respect to different periods of work. In general, however, his claims fall into three groups. First, he raises claims related to the trial court's failure to count, as compensable overtime, the time he was required to spend waiting in line at the Control Center at the Otisville facility at the beginnings of his shifts and the time he spent in certain other job-related activities before and after his shifts. Second, he challenges the court's failure to award him overtime compensation for the time he spent attending meetings at which his attendance was required, even when the meetings were not held during his shift time. Third, he contests the trial court's conclusion that the extra time he worked before and after his shifts was de minimis; according to Mr. Shea, a proper calculation of that time would show that it amounted to more time than could properly be considered de minimis.

In an opinion issued following the trial in the Shea case, the court stated that the compensable working period for a lieutenant such as Mr. Shea was between the time he picked up the keys and equipment for his shift and the time he turned over the keys and equipment at the end of his shift. The court concluded that time spent waiting in the key line at the Control Center at the beginning of a shift or walking out of the institution at the conclusion of a shift was not compensable time, because the applicable Bureau of Prisons operations memorandum provided that an employee "must be at the Control Center and have received his/her equipment" by the beginning of the shift. The memorandum dealt with the problem of delays in the key line by adding that if the employee arrived at the key line in a reasonable time to get equipment prior to the shift, but did not receive the proper equipment before the beginning of the shift, the employee would not be considered late. Bishop I, 72 Fed. Cl. at 770-71.

Because the incoming lieutenant on one shift would typically be expected to exchange equipment and identification chits with the outgoing lieutenant on the preceding shift, the court ruled that "the time the incoming lieutenant spends walking to the lieutenants' office is compensable overtime for the outgoing lieutenant who must wait for the incoming lieutenant to arrive. The outgoing lieutenant is not authorized to leave until he briefs the incoming lieutenant and exchanges equipment." Bishop II, 74 Fed. Cl. at 148. The court concluded that the time required to exchange information and equipment between shifts constituted overtime because "those activities require both lieutenants to be on duty at the same time," id. at 151, and because (except in those instances in which designated shift times overlapped) any overlap in required duties meant that one or the other lieutenant had to be working overtime. As the trial

court summed up the situation, "the exchange of pertinent information and equipment, called for in the written post orders, requires either the incoming lieutenant to arrive early, or the outgoing lieutenant to stay late, or both." Id. at 152.

Having found that Mr. Shea worked some overtime, the court then conducted a trial to determine how much, if any, compensable overtime work he did. Following the trial, the court concluded that the overtime required for the exchange of information and equipment was de minimis and accordingly not compensable. Based on testimony from a number of witnesses, the court concluded that the exchange of information and equipment between the incoming and outgoing lieutenants would ordinarily take no more than five minutes. In addition, the court concluded that the amount of time required to walk from the Control Center to the lieutenants' office was approximately a minute and a half. Even including the time required to pick up chits and keys, and to go through the sallyport gate, the court concluded that "it should not take more than three or four minutes to do these tasks and reach the lieutenants' office." Bishop II, 74 Fed. Cl. at 153. The court therefore concluded that the total required overtime, shared between the incoming and outgoing lieutenants "should not have exceeded ten minutes on a typical day." Id. at 153. Because the only pre-shift or post-shift activities that the court found to satisfy the requirements of the Doe case were the exchange of pertinent information and equipment, and the possible waiting time by the outgoing lieutenant before the exchange, the court concluded that "the time necessary to exchange pertinent information and equipment was no more than ten minutes each day and, therefore, the overtime required to accomplish this exchange was de minimis." Id. at 153-54.

The court also rejected Mr. Shea's argument that he was required to work overtime to conduct a roll call of correctional officers. The court ruled that although the correctional officers and the prison may have benefited from his taking the roll before his shift began, "he was not required to make himself available prior to the start of each shift and thus any claim based on conducting rolls fails" under the authority of the Doe case. Bishop II, 74 Fed. Cl. at 154. The court likewise rejected Mr. Shea's argument that he worked overtime for the period necessary to conduct a "count" of inmates near the end of his shift. The court stated that it was "satisfied that departure delays due to incomplete counts were inconsequential due to infrequency or because they were so brief as not to materially add to the delay." Id.

Mr. Shea argues that the trial court erred by not counting as compensable overtime the time he spent waiting in the key line and walking to the lieutenants' office. As for the time he spent walking to the lieutenants' office, the court did credit that time, which the court found to be about one and a half minutes. See Bishop II, 74 Fed. Cl. at 153. As for the time waiting in the key line, the court did not regard that time as constituting overtime work, because the pertinent Bureau of Prisons' operations memorandum treated each employee's shift as beginning with the employee's arrival at the Control Center and receipt of equipment.[1] In addition, to the extent that Mr. Shea

---

[1] Although the operations memorandum provided that an employee would not be treated as late if he arrived at the key line in a reasonable time to get his equipment before the beginning of the shift, that accommodation did not alter the fact that the employee's shift was treated as beginning upon the receipt of his equipment. By regulation, time spent on preliminary pre-shift activities is not compensable. 5 C.F.R. § 550.112(b)(2). Thus, time spent waiting in the key line is not compensable. See Lindow v. United States, 738 F.2d 1057, 1064 (9th Cir. 1984) (pre-shift time spent

contends that the court failed to count the time required to "talk with his replacement or other employees and in relinquishing the keys, radio, or battery," that is incorrect. The court counted those duties as part of its overtime analysis; it simply did not credit Mr. Shea's contention that performing those functions took as long as Mr. Shea contended. Id. at 151-54. We see no error in the court's analysis of the tasks for which Mr. Shea was entitled to overtime credit or the time required to perform those tasks. And because that time was less than ten minutes per day, by the court's calculation, we agree that the overtime attributable to those tasks was de minimis and thus not compensable.

Mr. Shea challenges various findings made by the trial court as to how long particular tasks took, contending that the court's findings that conflicted with Mr. Shea's testimony constituted clear error. The court based its findings on testimony from other witnesses, however, and we reject Mr. Shea's contention that the court's reliance on those witnesses' testimony was improper and rendered the court's findings clearly erroneous.

As noted, the trial court entered summary judgment against Mr. Shea on his claim that he was entitled to overtime compensation for his attendance at several monthly lieutenants' meetings that took place at times other than during his regular

---

passing through security checkpoints is not compensable time under the analogous provisions of the Portal-to-Portal Act, 29 U.S.C. § 254); see also IBP, Inc. v. Alvarez, 546 U.S. 21, 41-42 (2005) (time spent waiting to put on protective gear is not compensable under the Portal-to-Portal Act). Although the Portal-to-Portal Act does not apply to federal employees, the pertinent OPM regulations regarding preliminary activities are similar to the regulations promulgated under the Portal-to-Portal Act. See U.S. Dep't of the Air Force v. FLRA, 952 F.2d 446, 448 (D.C. Cir. 1991).

shift. Mr. Shea's claim is based in part on a 1999 post order that stated, "All lieutenants are required to attend the monthly lieutenant's meeting held on the first Wednesday of each month, or as otherwise scheduled by the captain." The court concluded that neither that post order nor any other written documents required Mr. Shea to attend meetings that did not occur during his regular working hours and that evidence submitted during the summary judgment proceedings indicated that the ordinary practice at the institution was for lieutenants not to attend if they were not on duty.

It is not necessary for us to decide whether that post order (or other evidence) was sufficient to create a triable issue of fact as to whether Mr. Shea was required to attend those meetings, because the record demonstrated that Mr. Shea was awarded compensatory time for meetings he attended that were held outside his normal shift hours. By regulation, the agency was not required to offer overtime pay, as opposed to compensatory time, to an employee at Mr. Shea's grade level. See 5 C.F.R. § 550.114(c). Moreover, the trial court found that there was no evidence that Mr. Shea requested overtime pay, as opposed to compensatory time, and in his brief Mr. Shea does not challenge the court's conclusion on that issue.[2] Accordingly, even if Mr. Shea was compelled to attend the lieutenants' meetings that took place outside of his regular working hours, the evidence showed that he was fully compensated through the award of compensatory time and is not entitled to an additional monetary award.

---

[2] This court has recently held that when a federal employee receives compensatory time for overtime work, the compensatory time is provided on an hour-for-hour basis. Doe v. United States, 513 F.3d 1348 (Fed. Cir. 2008); see 5 C.F.R. § 550.114(c) (providing for compensation for overtime work with "an equivalent amount of compensatory time off").

III

The trial court addressed the specific claims of the four Carlsen appellants in a separate opinion, and those four appellants have filed a separate appeal. In this section, we address the arguments of three of the Carlsen appellants, Charles Carlsen, John T. Damico, and Lourdes Natal, that are not common to the two cases. In the following section, we address the separate arguments of the fourth Carlsen appellant, John Tucker.

Appellant Carlsen worked at the Otisville facility, where his primary duties related to training programs. For the two-year period for which he claims relief, he asserts that on days when training sessions were held he arrived before the beginning of his shift to set up for training and stayed after his shift to clean up. He claims compensable overtime for both the pre-shift set-up and the post-shift clean-up. He also claims compensable overtime for time he worked after the end of his shift on those occasions when the count of inmates was not completed until after his normal quitting time.

Mr. Carlsen makes a separate claim for overtime credit for "executive closeout" meetings that he attended during the brief period when he served as Acting Assistant Warden. He contends that those meetings, although scheduled during working hours, sometimes ran later than his normal quitting time. He argues that the schedules of meetings and emails from the Warden's secretary reminding attendees of the meetings constituted the requisite written orders to perform overtime.

Appellant Damico served as Laboratory Bench Supervisor at the Bureau of Prisons medical facility in Springfield. For the one-year period for which he claimed relief, he alleged that he arrived early for his shift and left late. He claimed the extra

time was required at the beginning of his shift for him to pick up his equipment, walk to the laboratory, inventory his equipment, and review overnight lab requests. The extra time at the end of his shift, he alleged, was required to perform inventories, inform his replacement of pending lab work, and walk to the Control Center. He also claims that he was required to work overtime on those occasions on which he attended meetings that lasted past his scheduled quitting time.

Appellant Natal serves as a Supervisory Clinical Nurse at the Springfield facility. Her claims date from April 19, 2000, through the present. She alleges that she typically arrives at the facility 15 to 25 minutes before the beginning of her shift and leaves the facility between 5 and 15 minutes after the completion of her shift. She claims compensable overtime for those periods.

The trial court's analysis of the claims of appellants Carlsen, Damico, and Natal was essentially the same with respect to each. The court pointed out that none of the appellants was able to point to any written order directing the performance of overtime work. Mr. Carlsen relied on the warden's approval of a training schedule lasting from 7:30 a.m. to 4:00 p.m. and argued that the warden's approval implicitly required him to work overtime. The court concluded, however, that approval of a training schedule "does not explicitly order Mr. Carlsen to perform overtime." Carlsen, 72 Fed. Cl. at 795. The court also held, contrary to Mr. Carlsen's argument, that the schedule of executive closeout meetings and the email reminders about the meetings he was required to attend did not serve as explicit orders to perform overtime when the meetings were scheduled during the regular workday, even though the meetings would occasionally last until after the end of his shift. Id.

Activities Lieutenant. Under the circumstances, the court concluded, that amount of additional time was de minimis. Id. at 799-800. In making that determination, the court relied in particular on the fact that the amount of overtime would frequently be less than 10 minutes, and that when the overtime exceeded 10 minutes, it would only be by 1.5 minutes at the most. Accordingly, the court concluded that it would be an undue administrative burden to devise a means to keep track of those occasions on which Mr. Tucker's overtime would exceed 10 minutes, entitling him to between 10 and 11.5 minutes of overtime pay.

We see no legal error in the trial court's analysis. While it is true that the period that is normally regarded as the cut-off for de minimis overtime is 10 minutes, see 5 C.F.R. § 550.112(b)(1)(i), that number has not been treated as a rigid maximum. As the trial court pointed out, amounts greater than 10 minutes have been regarded as de minimis depending on the circumstances, such as the practical administrative difficulty of recording additional time, the aggregate amount of compensable time, and the regularity of the work. For example, in Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984), the employees alleged that they had worked between 5 and 15 minutes of overtime per day. The court treated that amount as de minimis, noting that the average amount of work was 7 to 8 minutes per day and that keeping track of the exact amounts of overtime under the circumstances would have been administratively burdensome. See also Bobo v. United States, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (applying the Lindow test).

The trial court in this case noted that the administrative difficulty of capturing overtime attendant to the exchanges of equipment and information at the end of the

lieutenants' shifts would be considerable, particularly because that amount of time varied from day to day; in that regard, the court noted that "the occasions on which compensable overtime lasted beyond ten minutes would not be a daily occurrence." Accordingly, the court found Mr. Tucker's overtime to be "infrequent, of trivial duration, and administratively impracticable to measure," Carlsen, 72 Fed. Cl. at 799, citing Bobo, 136 F.3d at 1468. We note that, under the trial court's calculation, the maximum amount by which Mr. Tucker's overtime exceeded 10 minutes was approximately 1.5 minutes, and that according to the trial court Mr. Tucker worked as much as 11.5 minutes of overtime only occasionally during the 20-month period at issue here. The aggregate amount of compensable overtime would therefore be quite small, even accepting Mr. Tucker's assertion that he spent 10-15 minutes at the institution following his shift during the period that he served as AM Activities Lieutenant. Finding no legal error in the trial court's assessment, we uphold the court's determination. Moreover, because the court in Mr. Tucker's case, unlike in Mr. Shea's case, did not find it necessary to resolve disputed issues of material fact in order to decide the matter, we hold that the trial court did not err in deciding Mr. Tucker's claim (as well as the claims of the other Carlsen plaintiffs) on summary judgment.

AFFIRMED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 6/2/08